## No. 27985

## The People of the State of Colorado v. Anthony Armijo

(589 P.2d 935)

Decided January 29, 1979.

Robert N. Miller, District Attorney, William G. Pharo, Deputy, for plaintiff-appellant.

A. M. Dominguez, Jr., for defendant-appellee.

*En Banc*

MR. JUSTICE LEE delivered the opinion of the Court.

The district attorney appeals from a judgment of the District Court of Weld County dismissing a three-count information. The defendant, Anthony Armijo, was charged in Count I with theft, section 18-4-401, C.R.S. 1973 (1976 Supp.), and Count II with defrauding a secured creditor, section 18-5-206, C.R.S. 1973 (1976 Supp.), and in Count III with removal of secured property, section 18-5-504, C.R.S. 1973.

The dismissal was entered by the court at the conclusion of a preliminary hearing on the basis that the district attorney had failed to establish

probable cause. We reverse.

Evidence presented at the preliminary hearing to establish probable cause showed, in summary, the following. The defendant was the owner of a 1974 Chevrolet Corvette. On August 9, 1976, the defendant sold the vehicle to Carol Martinez for $5,500. This transaction took place at The Eaton Bank. The purchase price was financed by the execution of a chattel mortgage in favor of The Eaton Bank. At that time, in the presence of Ms. Martinez and the bank officer, the defendant signed the title to the Corvette and delivered it to the bank which gave a cashier's check for $5,500 to defendant. Thereafter, the defendant cashed the check and received the proceeds. At the time of this transaction, the bank officer notarized defendant's signature on the title.

At the conclusion of the transaction, Ms. Martinez was given the title documents and chattel mortgage with instructions from the bank to file them with the Clerk and Recorder of Weld County. Ms. Martinez placed these documents in the Corvette but failed to file them with the County Clerk as instructed by the bank.

In December of 1976, Ms. Martinez loaned the automobile to Jim Armijo, a brother of the defendant. On December 15, 1976, the Corvette was impounded by the Greeley police department after it had been used in a robbery in which Jim Armijo was allegedly involved. Thereafter, on January 27, 1977, the defendant was successful in procuring the release of the Corvette from the Greeley police department by using a 1976 registration as identification of ownership.

Neither Carol Martinez nor The Eaton Bank had at any time authorized the defendant to take possession of the vehicle. The vehicle was never again seen.

At the conclusion of the probable cause hearing, the district court found that there was insufficient evidence to establish that Ms. Martinez was the owner of the vehicle. The court reached this conclusion because Ms. Martinez had not complied with the requirements of the Certificate of Title Act, section 42-6-101 *et seq.,* C.R.S. 1973. Specifically, the court found that Ms. Martinez failed to comply with the provisions of section 42-6-109(1), which provides as follows:

". . . The purchaser or transferee, within twenty days thereafter, shall present such certificate, duly transferred, together with his application for a new certificate of title to the director or one of his authorized agents, accompanied by the fee required in section 42-6-135 to be paid for the issuance of a new certificate of title; whereupon, a new certificate of title shall be issued and disposition thereof made as required in this part 1."

The district court reasoned that since a title to the Corvette had not been issued in the name of Ms. Martinez defendant was still the owner of the vehicle and could not, therefore, be guilty of its theft.

Additionally, the court ruled that the bank's security interest in the vehicle had not been perfected by reason of the failure to file the chattel mortgage with the Clerk and Recorder as required by section 42-6-119, C.R.S. 1973. The court thereupon dismissed all three counts of the information.

■ Preliminarily, we observe that the issue here is whether the evidence offered by the People, viewed in the light most favorable to the prosecution, was sufficient to induce a person of ordinary prudence and caution to a reasonable belief that the defendant committed the crimes charged. *People v. Treat,* 193 Colo. 570, 568 P.2d 473 (1977). Evidence sufficient to support a conviction is not necessary at this stage of the proceedings. *People v. District Court,* 186 Colo. 136, 526 P.2d 289 (1974).

■ It is undisputed from evidence presented that the defendant sold his Corvette to Ms. Martinez for $5,500, which he received. He did everything required of him by statute to transfer the title. Section 42-6-109(1), C.R.S. 1973, requires that ". . . . the person in whose name said certificate of title is registered . . . shall, in his own person or by his agent or attorney thereunto duly authorized, execute a formal transfer of the vehicle described in the certificate, which transfer shall be subscribed and sworn to before an officer authorized to administer oaths in this state. . . ." Here, defendant executed the formal transfer of the title by subscribing his name before a notary public at the bank, and he then delivered the title and possession of the vehicle upon receipt of the funds. Thus, he completely divested himself of ownership of the vehicle and any right to possession thereof.

The district court, apparently relying on the case of *Codding v. Jackson,* 132 Colo. 320, 287 P.2d 976 (1955), erroneously concluded that since the purchaser failed to obtain a certificate of title in her name the ownership still remained in the defendant. *Codding* involved a "title jumping" situation where the certificate of title was endorsed in blank and delivered to the purchaser who, without obtaining a new certificate, attempted to transfer the ownership of the vehicle to a third person. This court noted that the legislature intended to deprive the certificate of title of negotiability. *See also Dreiling v. St. Paul Insurance,* 28 Colo. App. 318, 472 P.2d 153 (1970).

We do not find *Codding, supra,* determinative of the issue of ownership as between the defendant seller and his immediate purchaser, Martinez, particularly when the rights of a remote purchaser are not involved. In *United Fire & Cas. Co. v. Perez,* 161 Colo. 31, 419 P.2d 663 (1966), this court stated:

"This Act has been construed to make financial transactions involving automobiles more secure and certain. It will be noted that other or different types of transactions are not made void particularly with reference to the parties to the transaction. The Certificate of Title Act has only been

invoked where the rights of third parties are involved. . . ." [Citing cases.]

*See also Waggoner v. Wilson,* 31 Colo. App. 518, 507 P.2d 482 (1972), where it was held that nondelivery of the certificate of title does not prevent a change of ownership as between the parties to the transaction.

■ It follows that when the defendant subsequently obtained possession of the Corvette from the Greeley police department, without the consent of the owner, Martinez, and the vehicle has later disappeared, it is not unreasonable for an ordinarily prudent and cautious person to conclude that the defendant intended to commit the crime of theft of the motor vehicle.

■ Concerning Count II of the information, defrauding a secured creditor, and Count III, removal of secured property, the record shows that defendant was present at the time of the chattel mortgage transaction at the bank and received the proceeds of the loan in payment for the Corvette. It is reasonable to infer that the defendant was aware of the security transaction. And it is undisputed that the bank did not consent to defendant's obtaining possession of the vehicle from the Greeley police. It would, therefore, not be unreasonable to conclude that the defendant had committed the crimes of defrauding a secured creditor and removing secured property as defined in section 18-5-206(1), C.R.S. 1973 (1976 Supp.)[1] and in section 18-5-504, C.R.S. 1973.[2]

The district court, however, found that the bank's security interest was not perfected as required by section 42-6-119, C.R.S. 1973, and therefore the defendant could not be convicted under Counts II and III. We do not agree with the court's interpretation of the statutes.

■ It is clear that the chattel mortgage created a security interest, which is defined as ". . . an interest in personal property or fixtures which secures payment or performance of an obligation." Section 4-1-201(37), C.R.S. 1973. The statutes under which defendant was charged in Counts II and III do not require that the security interest be perfected and we hold that they apply to any valid security interest, perfected or not.

■ Section 42-6-119 provides:

---

[1] "If a person, with intent to defraud a creditor by defeating, impairing, or rendering worthless or unenforceable any security interest, sells, assigns, transfers, conveys, pledges, encumbers, conceals, destroys, or disposes of any collateral subject to a security interest, he commits a class 1 petty offense if the value of the collateral is less than fifty dollars. If the value of the collateral is fifty dollars or more and less than two hundred dollars, he commits a class 2 misdemeanor. If the value of the collateral is two hundred dollars or more, he commits a class 4 felony."

[2] "If a person who has given a security interest in personal property, as security interest is defined in section 4-1-201(37), C.R.S. 1973, or other person with actual knowledge of such security interest, during the existence of the security interest, conceals or removes the encumbered property from the state of Colorado without written consent of the secured creditor, he commits a class 4 felony where the value of the property concealed or removed is one hundred dollars or more. . . ."

". . . .Any mortgage intended by the parties thereto to encumber or create a lien on a motor vehicle, to be effective as a valid lien against the rights of third persons, purchasers for value without notice, mortgagees, or creditors of the owners, shall be filed for public record and the fact thereof noted on the owner's certificate of title or bill of sale substantially in the manner provided in section 42-6-120; and the filing of such mortgage with the authorized agent and the notation by him of that fact on the certificate of title or bill of sale substantially in the manner provided in section 42-6-120 shall constitute notice to the world of each and every right of the person secured by such mortgage."

Noncompliance with the filing requirement impairs the validity of the lien of the chattel mortgage as between the mortgagee and third persons who have acquired rights in the security, subsequent mortgagees, purchasers for value without notice, and creditors of the owner. Defendant here had no rights to the vehicle, having been divested of all ownership. As such, he does not fall within the four categories of persons protected by the statute. This is evident from the language of section 42-6-127, C.R.S. 1973 which provides:

"Nothing in this part 1 shall be construed to impair the validity of a mortgage on a motor vehicle between the parties thereto as long as no purchaser for value, mortgagee, or creditor without actual notice of the existence thereof has acquired an interest in the motor vehicle described therein, notwithstanding that the parties to said mortgage have failed to comply with the provisions of this part 1."

█ Inasmuch as the filing of the mortgage for public record is not a prerequisite to its validity as security interest between the parties, it was error for the court to dismiss Counts II and III of the information for that reason.

The judgment of dismissal is reversed and the cause is remanded to the district court with directions to reinstate all three counts of the information.