The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Amos Victor (Vic) O'CANA,
Defendant-Appellee.

No. 84SA531.

Supreme Court of Colorado,
En Banc.

Sept. 15, 1986.

Rehearing Denied Oct. 20, 1986.

Barney Iuppa, Dist. Atty., David H. Zook, Chief Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Adele Graham, Santa Fe, N.M., David Graham, Taos, N.M., for defendant-appellee.

KIRSHBAUM, Justice.

The People appeal the trial court's order declaring a portion of section 18–5–504, 8 C.R.S. (1978), unconstitutional and, therefore, dismissing a portion of one count of an information charging the defendant, Amos Victor (Vic) O'Cana, with felony concealment or removal of secured property.[1] We vacate the order and remand the case for further proceedings.

In September 1982, Vera Miller purchased a 1983 Mazda automobile. She ob-

---

1. The People appeal pursuant to § 16–12–102, 8 C.R.S. (1978). *See* § 13–4–102(1)(b), 6 C.R.S. (1973).

tained financing for the purchase from the Central Bank of Colorado Springs (the bank). In February 1983, the defendant purchased the car from Miller for $1,500 and an agreement to assume Miller's debt to the bank. Miller executed appropriate documents to facilitate the defendant's application for a certificate of title to the vehicle. However, the defendant did not obtain the bank's permission to assume Miller's loan. The vehicle was later located in California, although the defendant did not obtain permission from the bank to take the car out of state.[2]

The second count of the information filed against the defendant alleges that he knowingly removed the 1983 Mazda from Colorado without the bank's permission and concealed it to prevent its repossession,[3] in violation of section 18–5–504, 8 C.R.S. (1978). That statute contains the following pertinent provisions:

> If a person who has given a security interest in personal property, as security interest is defined in section 4–1–201(37), C.R.S. 1973, or other person with actual knowledge of such security interest, during the existence of the security interest, knowingly conceals or removes the encumbered property from the state of Colorado without written consent of the secured creditor, he commits a class 4 felony where the value of the property concealed or removed is one hundred dollars or more.

§ 18–5–504, 8 C.R.S. (1978). After conducting a preliminary hearing, the trial court found probable cause to support this charge. At a later hearing the trial court considered a motion filed by the defendant to dismiss the concealment and removal charge on the ground that section 18–5–504 was unconstitutional. The trial court found the statute constitutional insofar as it prohibited concealment, but concluded that the provision proscribing removal of property from Colorado without consent violates constitutional guarantees of equal protection and due process of law.[4] The ruling was predicated upon the trial court's determinations that the statute requires no *mens rea* for commission of the offense of unauthorized removal of secured property and permits the determination of criminal liability to be made by discretionary decisions of a third party, the secured creditor. We do not so construe the statute.

## I

Statutes are presumed to be constitutional, and a party asserting that a particular statute is unconstitutional assumes the burden of establishing such assertion beyond a reasonable doubt. *See, e.g., People ex rel. City of Arvada v. Nissen*, 650 P.2d 547 (Colo.1982); *Bollier v. People*, 635 P.2d 543 (Colo.1981); *People v. Garcia*, 197 Colo. 550, 595 P.2d 228 (1979). The defendant asserts that the statute establishes a strict liability offense for conduct that is inherently lawful—driving an automobile from one jurisdiction to another. The trial court apparently agreed with this argument, noting that whereas the concept of concealing implied some degree of malevolence, the word "removes" implies no bad motive. We do not so construe the statute.

Statutes are to be construed in light of their professed purpose and the plain meaning of the language chosen by the

---

2. The information contains allegations that in September of 1983 the bank unsuccessfully attempted to repossess the car in California by means of an intermediary.

3. The information also contains additional counts charging the defendant with offenses of felony theft and felony criminal impersonation.

4. Although the trial court did not so specify, we assume its holding was based on the due process and equal protection clauses of both the Colorado and the United States Constitutions.

U.S. Const. amend. XIV states in pertinent part as follows:

> No State shall ... deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

Colo. Const. art. II, § 25, states as follows: No person shall be deprived of life, liberty or property without due process of law. The right to equal protection of the laws is included within article II, section 25, of the Colorado Constitution. *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980).

General Assembly. *People v. Smith,* 638 P.2d 1 (Colo.1981); *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975). It is well established that if a challenged statute is susceptible of several constructions, one of which is constitutional, the constitutional construction must be adopted. *People v. Schoondermark,* 699 P.2d 411 (Colo.1985); *Exotic Coins, Inc. v. Beacom,* 699 P.2d 930 (Colo.), *appeal dismissed,* —— U.S. ——, 106 S.Ct. 214, 88 L.Ed.2d 214 (1985); *People v. Jennings,* 641 P.2d 276 (Colo.1982); *People v. Garcia,* 595 P.2d 228.

The strained distinctions relied upon by the defendant are unwarranted in light of the purpose and language of section 18–5–504. The statute is designed to protect the ability of a secured creditor to look to the particular security underlying a debt in the event of default. Thus, the conduct prohibited—removal and concealment—is conduct that will impair that ability. Conduct which does not impair a creditor's security interest cannot be deemed violative of the statute.

■ The General Assembly has suggested this construction by specifically requiring the conduct prohibited by section 18–5–504 to be performed knowingly. It has defined this culpable mental state as follows: a person acts "knowingly" when, with respect to conduct or circumstances described by a statute, he is aware that his conduct is of such a nature or that such circumstances exist or, with respect to a result of his conduct, he is aware that his conduct is practically certain to cause the result. § 18–1–501(6), 8 C.R.S. (1978). In view of the language of the statute and its purpose, we conclude that the offense of removing secured property established by section 18–5–504 requires proof that the defendant knew of the existence of the security interest, knew that he was removing the secured property from Colorado without first having obtained the creditor's written consent to such removal, *see People v. Armijo,* 197 Colo. 91, 589 P.2d 935 (1979), and knew that under the circumstances of the removal that the creditor's

security interest would be impaired. Thus construed, the statute does not create a strict liability offense and does not violate constitutional due process and equal protection guarantees.

■ The defendant also asserts that the portion of the statute prohibiting removal of secured property from Colorado without consent is unconstitutionally vague. The guiding principle in a void for vagueness challenge is whether the terms of a criminal statute are so vague "that [persons] of ordinary intelligence must necessarily guess as to its meaning and differ as to its application...." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, ——, 70 L.Ed. 322 (1926); *see also, e.g., People v. Jennings,* 641 P.2d 276. There is nothing ambiguous or misleading about the word "remove"; the term connotes the act of changing the location of an item. *See Webster's Third New International Dictionary* 1921 (1976 ed.). We conclude that the statute provides ample notice to the populace of the prohibited conduct and a sufficiently precise standard for those charged with its enforcement to satisfy constitutional standards of specificity. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Jennings, supra.*

## II

The trial court also concluded that section 18–5–504 improperly delegates to the secured creditor unbridled discretion to determine the criminal responsibility of another, thus violating equal protection and due process guarantees.[5] Expressly relying on our decision in *People v. Vinnola,* 177 Colo. 405, 494 P.2d 826 (1972), the trial court reasoned that the offense of removing secured property from the state is not completed by the acts of the accused, but, rather, is dependent entirely upon the discretionary decision of the secured party to file or not to file a complaint. The trial court misconstrued the statutory frame-

5. *See supra* note 4.

work and, accordingly, misapplied *Vinnola.*

In *Vinnola,* this court declared C.R.S. 1963, section 40–14–20 (amended 1970), a statute prohibiting the uttering of bad checks, constitutionally infirm on several grounds. Because the statute required not only that the maker write a check knowing the applicable account contained insufficient funds but also that the financial institution elect to dishonor the check because of the insufficient funds, we concluded that the latter element of the offense as defined placed the question of the statute's applicability completely within the financial institution's unfettered discretion. This complete dependence upon the conduct of others as an integral element of an offense was deemed violative of both due process and equal protection guarantees.

 Under section 18–5–504 no affirmative conduct by any third party is necessary to complete the offense as defined. The criminal conduct defined by this statute is complete once a person removes the secured property from the state, knowing the security interest may thus be impaired, without first obtaining written permission for such removal from the creditor. *People v. Armijo,* 197 Colo. 91, 589 P.2d 935. The fact that a secured party who is the victim of the prohibited conduct may elect not to report such conduct to prosecuting officials does not alter the fact that the offense as statutorily defined is completed by an accused's conduct. *See People v. Andrews,* 632 P.2d 1012 (Colo.1981); *People v. Abbott,* 638 P.2d 781 (Colo.1981); *People v. Smith,* 638 P.2d 1.

Furthermore, the secured party's discretion to grant or withhold approval of a request to remove secured property from the state is merely a predicate to, rather than an element of, the conduct actually prohibited. The decision to remove the

property may occur without any effort to obtain consent as well as with knowledge that a request for consent has been denied.

For the foregoing reasons, we conclude that section 18–5–504, 8 C.R.S. (1973), does not violate the due process or equal protection clauses of the United States or Colorado Constitutions.[6] The trial court's order based on its contrary conclusion must be vacated.

The trial court's order dismissing a portion of count two of the information is vacated. The case is remanded to the trial court with directions to reinstate count two of the information as initially charged and to conduct such further proceedings as may be appropriate.

---

6. In his amended motion to dismiss the defendant asserted that § 18–5–504 also violates constitutional prohibitions against burdening interstate commerce, restricting rights to travel and impairing obligations of contract. In his brief on appeal the defendant argues, apparently for the first time, that the statute violates constitu-

tional safeguards against imprisonment for civil debt and is overbroad because it provides a heavier penalty than another statute for identical conduct. The latter two arguments were not presented to the trial court, and the trial court did not reach the other arguments; we do not reach them in this appeal.