## No. C-1732

## The People of the State of Colorado v. Timothy Anthony Garcia

(595 P.2d 228)

Decided May 21, 1979.

Eugene L. Farish, District Attorney, for petitioner.

Montano & Encinas, Duane Montano, for respondent.

*En Banc.*

MR. JUSTICE ROVIRA delivered the opinion of the Court.

The People appeal the ruling of the county court, affirmed by the district court, declaring section 18-12-106(1)(d), C.R.S. 1973, to be unconstitutionally vague and overbroad. We reverse.

The challenged provision states:

"18-12-106. Prohibited use of weapons. (1)   A person commits a class 2 misdemeanor if:

. . . .

"(d)   He has in his possession a firearm while he is under the influence of intoxicating liquor or of a narcotic drug or dangerous drug. Possession of a permit issued under section 18-12-105(2)(c) is no defense to a violation of this subsection (1).

The statute was declared to be unconstitutional on its face by the court in granting the defendant's pre-trial motion to dismiss. Our review of the district court opinion addresses two issues: first, is the statute overbroad in that it proscribes constitutionally protected behavior; second, is the provision so vague that it deprives the defendant of due process of law?

We note at the outset the fundamental principles which guide our review of constitutional attacks on legislation: a statute is presumed to be constitutional, and the party attacking the provision's validity has the burden of proving that it is unconstitutional; *People v. Summit*, 183 Colo. 421, 517 P.2d 850 (1974); also, if a statute is susceptible to different interpretations, one of which is in accord with constitutional principles, we will adopt that constitutional construction. *People v. District Court*, 185 Colo. 78, 521 P.2d 1254 (1974).

I.

The district court stated that the statute was overbroad because commonly accepted behavior falls within the purview of the provision.[1]   We disagree.

The overbreadth doctrine is applicable to legislative enactments which threaten the exercise of fundamental or express constitutional rights, such as First Amendment freedoms, *Bolles v. People*, 189 Colo. 394, 541 P.2d 80 (1975), or the right to bear arms. *City of Lakewood v. Pillow*, 180 Colo. 20, 501 P.2d 744 (1972). The basis for the position of the district court was that section 18-12-106(1)(d), C.R.S. 1973, encompassed behavior which was protected by the constitutional right to bear arms. *Colo. Const.* Art. II, Sec. 13.

The right to bear arms is not absolute, and it can be restricted by the state's valid exercise of its police power. *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975). Thus, the inclusion of the allegedly commonplace behavior within the purview of the statute does not necessarily

---

[1] *E.g.*, hunters drinking at their camps at night, policemen drinking when off duty, citizens drinking in their homes with firearms in the vicinity.

render the act overbroad. The determinative factor in an overbreadth analysis is not the prohibition of acts which are commonplace, but rather the prohibition of acts which are legitimate. The standard for the determination of legitimacy is whether the legislative act was within the proper exercise of its police power. An act is within the state's police power if it is reasonably related to the public health, welfare, and safety. *Love v. Bell,* 171 Colo. 27, 465 P.2d 118 (1970).

In *City of Lakewood, supra,* we noted that the ordinance at issue there prohibited legitimate acts, such as business operations of gunsmiths, pawnbrokers and sporting goods stores, or keeping a gun for the purpose of defense of self or home and that such acts could not reasonably be considered unlawful under an exercise of police power. Subjecting legitimate behavior to criminal sanctions thus rendered the ordinance overbroad.

■ Such is not the instant case. It is clearly reasonable for the legislature to regulate the possession of firearms by those who are under the influence of alcohol or drugs. Unlike *City of Lakewood, supra,* the statute here proscribes only that behavior which can rationally be considered illegitimate, and thus properly prohibited by the state's exercise of its police power. Accordingly, the statute does not restrict the exercise of any fundamental right and is not overbroad.

## II.

■ The district court also held that section 18-12-106(1)(d), C.R.S. 1973, is unconstitutionally vague. The first essential of due process is that a statute must state its mandate with reasonable clarity. *People v. Blue, supra.* The terms of a penal statute must be sufficiently explicit to inform men of common intelligence what conduct on their part will render them liable to criminal penalties. *People v. Gonzales,* 188 Colo. 272, 534 P.3d 626 (1975). However, there is a limit to the degree of precision that can be required of any statute. In *Blue, supra,* we quoted with approval the pronouncement of the United States Supreme Court in *Boyce Motor Lines v. United States,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952): "[F]ew words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

The trial court and the district court held that section 18-12-106(1)(d), C.R.S. 1973, was too vague because "possession" is an impre-

cise term.[2] We disagree. ''Possession'' is not defined in the statute, nor is it a term of art in the law.

Possession of firearms is proscribed in other jurisdictions under various circumstances.[3] None of these statutes expressly define the term. Nor has this court found it necessary to define the word. Rather, it is a common term which is to be given its generally accepted meaning, *People v. Gallegos,* 193 Colo. 108, 563 P.2d 937 (1977), as well as the benefit of commonsense understanding. *People v. Garcia,* 189 Colo. 347, 541 P.2d 687 (1975).

The commonsense definition of "possession," as it is used in this statute, is the actual or physical control of a firearm.[4] *See State v. Goodseal,* 220 Kan. 487, 553 P.2d 279 (1976); *see also Black's Law Dictionary,* 1324 (4th ed. 1951).

Adopting this common usage of "possession" is supported by an analysis of section 18-12-106, C.R.S. 1973. The title of that section is "Prohibited *use* of weapons" (emphasis added); all of the other acts proscribed by the statute entail some active use — "aims," "discharges," "sets trap." Interpreting "possession" to mean anything other than actual or physical control would thus constitute an inconsistent construction of the statute.

As we stated in *Blue, supra,* the legislature is not required to define readily comprehensible and everyday terms which it uses in statutes. The vagueness doctrine is not an exercise in semantics to emasculate legislation; rather, it is a pragmatic means to ensure fairness. Where fairness can be achieved by a commonsense reading of the statute, we will not adopt a hypertechnical construction to invalidate the provision.

The judgment of the district court is reversed.

---

[2] The district court noted that, because "possession" could be interpreted to mean "ownership," any owner of a firearm could be convicted under the statute if he became intoxicated. As noted *infra,* such an interpretation of "possession" would be erroneous, and as such, an unconstitutional application of the statute.

[3] 18 *U.S.C.App.* § 1202(a) (1976); Ariz. Rev. Stat. Ann. § 13-919; Kan. Stat. § 21-4204(1)(b); Or. Rev. Stat. § 166.270.

[4] The determination of whether or not a firearm is within one's actual or physical control is a question of fact for the jury. However, it is clear that the mere ownership of a firearm is not sufficient to constitute "possession" under the statute. Some of the factors which could be considered by the trier of·fact in making this determination are: (1) the proximity of the defendant to the firearm; (2) the ordinary place of storage of the firearm; (3) the defendant's awareness of the presence of the firearm; (4) locks or other physical impediments which preclude ready access to the firearm.