The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 21, 2026

## 2026 COA 39

**No. 25CA2319, *People v. Ambrose* — Crimes — Aggravated Robbery — Then and There so Armed**

A division of the court of appeals holds that, for the purposes of the aggravated robbery statute, section 18-4-302(1)(d), C.R.S. 2025, a person represents that he is "then and there so armed" — that is, armed with a covered "article" — if, at the time and place of the representation, the article, if it existed, would be easily accessible and readily available for that person's use.

COLORADO COURT OF APPEALS

**2026 COA 39**

Court of Appeals No. 25CA2319
El Paso County District Court No. 25CR4277
Honorable Robin Chittum, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Mark Alan Ambrose,

Defendant-Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Fox and Dunn, JJ., concur

Announced May 21, 2026

Michael J. Allen, District Attorney, Doyle Baker, Senior Deputy District
Attorney, Melissa Bollig, Senior Deputy District Attorney, Colorado Springs,
Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Amanda Bishop, Deputy State
Public Defender, Colorado Springs, Colorado, for Defendant-Appellee

¶ 1 The People charged defendant, Mark Alan Ambrose, with aggravated robbery of a convenience store. Because Ambrose told the store's manager — while both were standing next to Ambrose's vehicle — "[w]e got everything we need, there's nothing you can do about it. I have a 9-mil in the car," the People brought the charge under section 18-4-302(1)(d), C.R.S. 2025. The relevant portion of that provision says that a person commits aggravated robbery if "during the act of robbery or immediate flight therefrom . . . [h]e represents verbally or otherwise [to any person who is present] that he is then and there so armed" — that is, armed with "any article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon."

¶ 2 Following a preliminary hearing at which the prosecution made an evidentiary showing supporting the charge, the district court found that, although the prosecution had established probable cause to believe that Ambrose had committed robbery, it hadn't established probable cause to believe that he had committed aggravated robbery. The court reached that conclusion by interpreting the "then and there so armed" element as requiring proof that Ambrose represented that he had a deadly weapon (or

1

other covered article) on his person. Because the prosecution hadn't presented such evidence, the court reduced the charge from aggravated robbery, a class 3 felony, to robbery, a class 4 felony (*see* § 13-4-301, C.R.S. 2025).

¶ 3     The People appeal the district court's reduction of the charge. *See* § 16-12-102(1), C.R.S. 2025 (the prosecution may immediately appeal any order of a court that "dismisses one or more counts of a charging document prior to trial"); *People v. Severin*, 122 P.3d 1073, 1074 (Colo. App. 2005) ("In reducing a charge, . . . a court in effect dismisses the greater charge and substitutes a lesser one.").

¶ 4     We hold for the first time in a published Colorado appellate court opinion that the "then and there so armed" element may be proved by evidence that the defendant represented that he then had a deadly weapon easily accessible and readily available for use: The defendant need not have represented that he then had a deadly weapon on his person. And because we conclude that the prosecution's evidence was sufficient to establish that the deadly weapon mentioned by Ambrose was, if it existed, easily accessible and readily available for Ambrose's use when he made the threat, we also hold that the district court erred by concluding that the

prosecution had failed to establish probable cause to believe that Ambrose committed aggravated robbery. We therefore reverse the district court's order and remand for the court to reinstate the aggravated robbery charge.

## I.     Background

¶ 5     At the preliminary hearing, the prosecution presented evidence from which a factfinder could reasonably find the following facts.

¶ 6     As shown on the convenience store's security camera footage, Ambrose walked into the store and loaded five cases of Red Bull energy drink onto a hand dolly and left the store without paying. He rolled the cases to the passenger side of a two-door utility truck parked in the store's parking lot and loaded them into the truck.[1]

¶ 7     The store's manager walked to the front of the truck to confront Ambrose, who was standing next to the truck's passenger-side door. He asked Ambrose if he had taken the Red Bull. Ambrose walked toward the manager and said to him, "[W]e got everything we need, there's nothing you can do about it, I have a 9-

---

[1] The utility truck had been reported stolen. The People also charged Ambrose with three counts of motor vehicle theft related to the utility truck. Those charges aren't at issue in this appeal.

mil in the car." The manager walked back into the store and called 911. Shortly thereafter, Ambrose drove away.

¶ 8    Officer Bryan Coronado responded to the scene. The manager told the officer that he felt threatened and scared when Ambrose told him he had a gun, adding, "I am not going to get shot over Red Bull."

¶ 9    Officers later spotted the vehicle and stopped it. Ambrose was the driver. Red Bull cases were in the back bed of the vehicle. Ambrose fled on foot, but officers caught him. He admitted to one of the officers that he had stolen the Red Bull.

¶ 10   Following the prosecution's evidentiary presentation, Ambrose's counsel argued that the prosecution hadn't presented any evidence of the aggravated robbery element that Ambrose had made the manager believe Ambrose was "then and there so armed" with a deadly weapon. Counsel acknowledged that "'I have a 9-mil [in the car]. I got all I want,' is kind of, [in] the light most favorable to the [p]rosecution, their strongest statement." But counsel argued that there was no evidence that Ambrose was "then and there so armed with a deadly weapon" because the prosecution hadn't

presented evidence that there was a deadly weapon "on [Ambrose's] person" or that any such weapon "was pulled."

¶ 11  The prosecutor countered that Ambrose had verbally or otherwise represented that he was armed with a deadly weapon when he said he had a "9-mil" in the truck.  She argued, "Saying that you have a 9-millimeter in the car and you're using that to effectuate the robbery, in order to get away with the stolen property that he ultimately ends up admitting that he stole, is, in fact, representing verbally or otherwise that he is armed with a deadly weapon."  The prosecutor added that Ambrose hadn't been charged with committing a crime of violence because he had only *represented* that he had a gun.

¶ 12  As noted above, the district court concluded that there was probable cause to believe that Ambrose had committed robbery.  But the court concluded that, even viewing the evidence in the light most favorable to the prosecution and granting the prosecution the benefit of every reasonable inference, the prosecution hadn't shown probable cause to believe that Ambrose "represented verbally or otherwise that [he] was then and there so armed."  The court reasoned, "[A]rmed, I think, in a practical, usual, common sense

definition is I have something on me that I can use right now in order to injure, hurt, kill you. That is then and there so armed. Then and there so armed is not I have got something in the truck." The court therefore dismissed the aggravated robbery charge, reducing it to a charge of robbery.

## II.    Discussion

¶ 13    The People contend that the district court misinterpreted the statutory phrase "then and there so armed" and that, applying the correct interpretation of that phrase, sufficient evidence established probable cause to believe that Ambrose committed aggravated robbery. We agree.

### A.    Standard of Review

¶ 14    "A preliminary hearing is 'a screening device, designed to determine whether probable cause exists to support charges that an accused person committed a particular crime or crimes.'" *People v. Romero*, 2025 COA 91, ¶ 8 (quoting *People v. Treat*, 568 P.2d 473, 474 (Colo. 1977)); *accord People v. Hodge*, 2018 COA 155, ¶ 10. At the hearing, the prosecution must establish probable cause "as to each element of the crime." *People v. Moyer*, 670 P.2d 785, 791 (Colo. 1983). The court must view the evidence in the light most

favorable to the prosecution and must give the prosecution the benefit of all potential inferences. *People v. Hall*, 999 P.2d 207, 221 (Colo. 2000); *People v. Nygren*, 696 P.2d 270, 272 (Colo. 1985).

¶ 15    We review a district court's probable cause determination for an abuse of discretion. *People v. Dilka*, 2026 CO 12, ¶ 12; *Hodge*, ¶ 11. "But to the extent a [district] court's probable cause finding rests on interpreting a question of law, we review the [district] court's interpretation de novo." *Dilka*, ¶ 12; *see also People v. McGee*, 2026 CO 4, ¶ 5 (we review a question of statutory interpretation de novo); *People v. Mitchell*, 2024 COA 7M, ¶ 19 ("A court abuses its discretion 'if it misconstrues or misapplies the law or otherwise reaches a manifestly arbitrary, unreasonable, or unfair result.'" (quoting *People v. Johnson*, 2019 COA 159, ¶ 10)), *aff'd*, 2026 CO 8. "If we determine that [the district] court applied an erroneous construction of law at a preliminary hearing, we will review the record and determine whether the facts, when viewed in the light most favorable to the prosecution, would induce a reasonably prudent and cautious person to entertain the belief that the defendant committed the crime charged." *Hall*, 999 P.2d at 221.

## B.     Principles of Statutory Interpretation

¶ 16     This appeal turns on the meaning of the phrase "then and there so armed" in section 18-4-302(1)(d).

¶ 17     When construing a statutory phrase, we must ascertain and effectuate the General Assembly's intent. *People v. Diaz*, 2015 CO 28, ¶ 12.  To do so, "we look first to the language of the statute, giving its words and phrases their plain and ordinary meanings." *McCoy v. People*, 2019 CO 44, ¶ 37.  "We construe the statute as a whole, in an effort to give consistent, harmonious, and sensible effect to all its parts, and we read the words and phrases in context and construe them according to the rules of grammar and common usage." *Diaz*, ¶ 12; *accord People v. Rodriguez*, 2025 CO 2, ¶ 8; *see* § 2-4-101, C.R.S. 2025 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.  Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

¶ 18     If, after applying these principles, we conclude that "the language is clear and unambiguous, we enforce it as written and

don't resort to other tools of statutory construction." *People v. Woodyard*, 2023 COA 78, ¶ 57.

### C. Analysis

¶ 19    Subsection 18-4-302(1)(d) imposes criminal culpability for aggravated robbery when a person "possesses any article used or fashioned in a manner to lead any person reasonably to believe it to be a deadly weapon or represents verbally or otherwise that he is then and there so armed." So, under this provision, a robbery may constitute aggravated robbery, as relevant to this case, even when a person doesn't possess a deadly weapon: The "article" doesn't have to be a deadly weapon and a mere representation of being "armed" with a covered "article" can suffice. *See People v. Lorio*, 546 P.2d 1254, 1256 (Colo. 1976) (proof of a representation, even absent proof of actual possession, is sufficient).

¶ 20    Ambrose contends that, under the plain language of the statute, "then and there so armed" means the robber must have the weapon, or must represent that he has the weapon, "immediately available" and that "words alone, untethered to contemporaneous possession, display, or conduct suggesting access to a weapon, are

sufficient."[2]  He says that the article isn't immediately available when a weapon is represented to be inside a vehicle and the person making the representation is standing outside the vehicle.  The People contend, however, that a person is "then and there so armed" when the weapon is easily accessible and readily available for use.  We agree with the People.

¶ 21    We begin, of course, by considering the plain and ordinary meanings of the aggravated robbery statute's terms.  *See McCoy*, ¶ 37.

¶ 22    "Then and there" means "on the spot."  Webster's Third New International Dictionary 2370 (2002).  Considered in the context of section 18-4-302(1)(d), therefore, "then and there" means at the time and place the representation of being "so armed" was made.

¶ 23    We turn, then, to the term "so armed."  In *People v. Loomis*, 857 P.2d 478 (Colo. App. 1992), a division of this court considered the term "armed" as used in the first degree burglary statute,

---

[2] In so arguing, Ambrose says that the district court didn't "assert [that] the weapon would have to be on physical person [sic]."  But it did.  The court said, "[A]rmed, I think, in a practical, usual, common sense definition is I have something *on me* that I can use right now."  (Emphasis added.)

section 18-4-202(1), C.R.S. 2025.  Relying on decisions from other jurisdictions, the division held that a person is "armed with a deadly weapon if a firearm is 'easily accessible and readily available for use by the defendant for either offensive or defensive purposes.'" *Id.* at 482 (quoting *State v. Hall*, 732 P.2d 524, 528 (Wash. Ct. App. 1987)).  Many courts in other jurisdictions have similarly construed the term "armed."  S*ee, e.g.*, *State v. Romero*, 659 P.2d 655, 658 (Ariz. Ct. App. 1982) ("A person is 'armed' with a deadly weapon when such weapon is within his immediate control and available for use in the crime."); *State v. Herbert*, 601 N.W. 210, 213 (Minn. Ct. App. 1999) (applying this definition to a statute criminalizing "possession" of a firearm during a burglary); *State v. Ray*, 71 P.3d 1247, 1254 (Mont. 2003) ("[T]here is near uniform agreement among the states that the term 'armed' means readily accessible and available for use." (citing cases)), *overruled on other grounds by*, *State v. Swan*, 160 P.3d 511 (Mont. 2007); *State v. Merritt*, 589 A.2d 648, 650 (N.J. Super. Ct. App. Div. 1991) (The "common understanding [is] that 'a person is "armed" if a weapon is "easily accessible and readily available for use . . . .""" (quoting *Hall*, 732 P.2d at 527)); *People v. Searle*, 261 Cal. Rptr. 898, 900 (Ct. App.

11

1989) (the defendant was "armed with . . . a weapon at the time of the commission of the crime" when a gun was found in an unlocked compartment in the back of his car during a drug deal, and was therefore "available for use").

¶ 24    Ambrose offers no plausible reason why the prevailing interpretation of "armed" doesn't or shouldn't apply to section 18-4-302(1)(d). Instead, he advocates for an additional requirement that the representation be accompanied by some "display . . . or conduct suggesting access to a weapon." But the statute expressly says that a representation is sufficient. We aren't at liberty to add limitations to a statute's applicability that its text doesn't require. *People v. Lockett*, 2025 COA 1, ¶ 19; *People v. Atencio*, 219 P.3d 1080, 1082 (Colo. App. 2009).

¶ 25    We therefore conclude that a person is "then and there so armed" if the article is easily accessible and readily available for the robber's use at the time and place of the representation.

¶ 26     Our conclusion is buttressed by section 18-4-302(1)(d)'s use of "possesses" in its first clause.  *See Diaz*, ¶ 12 (we must consider a statute's words and phrases in context).[3]

¶ 27     In *People v. Garcia*, 595 P.2d 228 (Colo. 1979), the court held that "[t]he commonsense definition of 'possession,' as used in [the statute prohibiting "possession [of] a firearm" while under the influence of alcohol or drugs] is the actual or physical control of a firearm."  *Id.* at 231 (construing § 18-12-106(1)(d), C.R.S. 2025).  The court then set forth several factors a factfinder should consider in determining whether the defendant had actual or physical control of a firearm: "(1) the proximity of the defendant to the

---

[3] Ambrose argues that the People didn't preserve the argument that Colorado case law construing the term "possession" supports their interpretation because they didn't separately argue below that that Ambrose "possessed" a firearm.  But the People don't argue that Ambrose possessed a firearm.  Rather, they argue that case law construing the term — which is used in section 18-4-302(1)(d), C.R.S. 2025 — supports their proposed construction of "then and there so armed."  The People are therefore not making a new substantive argument but are instead arguing that the context of "then and there so armed" — which includes the clause preceding that phrase — sheds light on the phrase's meaning.  We must, of course, construe "then and there so armed" in context.  S*ee People v. Rodriguez*, 2025 CO 2, ¶ 8.  The People's argument about the meaning of the term "possesses" is therefore subsumed in their broader argument about the meaning of "then and there so armed."

firearm; (2) the ordinary place of storage of the firearm; (3) the defendant's awareness of the presence of the firearm; [and] (4) locks or other physical impediments which preclude ready access to the firearm." *Id.* at 231 n.4; *see also People v. Martinez*, 780 P.2d 560, 561-62 (Colo. 1989) (applying this definition to the statute prohibiting possession of a weapon by a previous offender statute). So the "commonsense" meaning of possession encompasses some situations in which the "firearm" isn't on the defendant's person.

¶ 28     We don't see any reason why this meaning of possession shouldn't apply to section 18-4-302(1)(d)'s first clause. And if "possesses" doesn't require that the article be on the robber's person, we don't see why "armed" should. After all, the evident purpose of both clauses of the subsection is to raise the level of the offense when a robber takes the extra step of attempting to place a person in fear of the robber's use of a deadly weapon — whether the robber has a deadly weapon or not.

¶ 29     Applying this understanding of the phrase "then and there so armed," we have little difficulty in concluding that the prosecution presented sufficient evidence to establish probable cause to believe that Ambrose committed aggravated robbery.

14

¶ 30     Immediately after Ambrose loaded the cases of Red Bull into the utility truck, but before he could drive away, the convenience store's manager went outside and walked up to the front of the two-door truck.  The manager asked Ambrose if he had stolen the cases of Red Bull.[4]  At that point, Ambrose was standing by the truck's passenger-side door.  Ambrose walked towards the manager and passed him on the way to the driver's side door.  At some point during that very short journey from one side of the truck to the other, Ambrose said, "[W]e got everything we need, there's nothing you can do about it, I have a 9-mil in the car."

¶ 31     Viewing this evidence in the light most favorable to the prosecution, a reasonable factfinder could determine that Ambrose represented that he was "then and there . . . armed" with a deadly

---

[4] Ambrose argues that "possession" of the deadly weapon must be "contemporaneous" with the taking of the stolen items and that the evidence presented by the prosecution doesn't show such contemporaneous possession because he made the representation after he left the store.  First of all, possession isn't required.  But in any event, Ambrose hadn't completed the robbery; the manager was trying to stop it when he followed Ambrose to the parking lot.  And Ambrose was at least in "immediate flight" from the robbery when he made the representation, which suffices under the express terms of section 18-4-302(1).

weapon — that is, there was then a deadly weapon in the truck that was easily accessible and readily available for Ambrose's use.

¶ 32    The district court therefore abused its discretion by reducing the charge from aggravated robbery to robbery.

### III.    Disposition

¶ 33    We reverse the district court's order and remand for reinstatement of the aggravated robbery charge.

JUDGE FOX and JUDGE DUNN concur.